### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

In re:  **RICHARD D. PASCHALL,**                    **Case No. 07-32048-KRH**
                                                     **Chapter 7**

                              **Debtor.**

_____

### TRUSTEE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUSTEE'S OBJECTION TO CLAIM # 11 FILED BY DEBORAH PRUNTY

**COMES NOW** Roy M. Terry, Jr. ("Chapter 7 Trustee"), by counsel, and in support of and in addition to the points of authority in the *Trustee's Objection to Claim # 11 filed by Deborah Prunty* (docket # 44), respectfully states as follows:

#### Jurisdiction and Venue

1.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning if 28 U.S.C. § 157(b)(2).

2.     Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are Bankruptcy Code § 362(k)(1).

Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
Brittany J. Berlauk, VSB No. 80131
DurretteCrump PLC
1111 E. Main St., 16th Floor
Richmond, Virginia 23219
☎ 804.775.6900
🖹 804.775.6911
Counsel for Chapter 7 Trustee

**Background**

4.      On June 3, 2007 (the "Petition Date"), Richard D. Paschall ("Debtor") filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code.  Stip. of Fact ¶ 58 at 9.

5.      Roy M. Terry, Jr. was appointed interim Chapter 7 Trustee and continues to serve in that capacity.  Stip. of Fact ¶ 59 at 9.

6.      By letter from Elizabeth Gunn (Counsel for Trustee) to Prunty, dated January 16, 2008, the Trustee notified Prunty of Debtor's bankruptcy and offered to settle without filing an adversary proceeding.  Stip. of Fact ¶ 60 at 9.

7.      On April 7, 2008, the Trustee initiated the adversary proceeding *Terry v. Paschall (In re Paschall)*, Adv. Proc. No. 08-03049 (Bankr. E.D. Va.).  Stip. of Fact ¶ 61 at 9.

8.      On April 11, 2008, the Trustee served Prunty with a copy of the Complaint.  Stip. of Fact ¶ 62 at 9.

9.      Hearing was held January 8, 2009 on the cross-motions for summary judgment filed by the Chapter 7 Trustee and Prunty.  Stip. of Fact ¶ 63 at 9.

10.      On February 20, 2009, the Court entered an order granting the Chapter 7 Trustee's motion for summary judgment on Counts I and V (avoiding the transfers of a certain piece of real property commonly known as 7104 Jocelyn Court, Warrenton, Virginia 20187 (the "Fauquier Property" or "Jocelyn Court") and a certain piece of real property commonly known as 15018 Rosebay Forest Drive, Midlothian, Virginia 23112 (the "Midlothian Property" or "Rosebay Forest Drive") (collectively the "Properties") and permitting recovery under § 550 on the stipulated facts); granting Prunty's motion for summary judgment on Counts II, III and IV; and left Count VI (requesting permission to sell co-owned properties) open.  *Terry v. Paschall*

2

*(In re Paschall)*, Adv. P. No. 08-03049-KRH, *Order* (Bankr. E.D. Va. Feb. 20, 2009).  Stip. of Fact ¶ 64 at 9.

11.    Despite numerous appeals, that Order was never overturned.[1]  Stip. of Fact ¶ 65 at 9.

12.    Notwithstanding, on or about February 23, 2010, during Prunty's appeal to the Fourth Circuit, Prunty sold the bankruptcy estate's interest in the Midlothian Property without permission from this Court or prior knowledge of the Chapter 7 Trustee.  *See* Stip. of Fact ¶ 66 at 10.

13.    At closing on or about February 23, 2010, proceeds from the sale of the Midlothian Property were used to pay off the outstanding balance of the $183,200.00 promissory note on which Prunty was the sole borrower.  *See* Stip. of Fact ¶¶ 30, 31, 67, at 5, 10.  Prunty was the sole borrower on the promissory note because the lender (Southern Trust Mortgage, LLC) refused to fund the note if the Debtor was also on the note.  *See* Stip. of Fact ¶¶ 30, 31, at 5.  However, because Prunty and the Debtor were on the title for the Midlothian Property, the deed of trust securing the promissory note was signed by both Prunty and the Debtor.  *See* Stip. of Fact ¶ 32, at 5.

---

[1] Prunty appealed the Court's interlocutory ruling to District Court.  By Memorandum Opinion and Order entered June 1, 2009, the U.S. District Court affirmed the Order of this Court and remanded the case to this Court for further proceedings.  Prunty filed a Petition for Permission to Appeal the U.S. District Court's ruling to the Fourth Circuit.  By Order entered July 14, 2009, the Fourth Circuit granted the Petition and transferred the case to the regular docket.  *See Prunty v. Terry*, No. 09-198 (4th Cir. 2009).  By unpublished per curiam opinion and Judgment entered on July 16, 2010, the Fourth Circuit affirmed the judgment of the U.S. District Court.  *See Prunty v. Terry*, No. 09-1790 (4th Cir. 2010).  Prunty petitioned the Fourth Circuit for a panel hearing and rehearing en banc.  By Order entered September 21, 2010, the Fourth Circuit denied the petition for rehearing and rehearing en banc.  *See id.*  On December 20, 2010, Prunty filed a Petition for Writ of Certiorari with the U.S. Supreme Court.  By Order entered February 28, 2011, the U.S. Supreme Court denied the Petition for Writ of Certiorari.

14.     On February 25, 2010, Prunty deposited the check for $79,685.01 from the Settlement Agent into a high performance money market account at Wachovia Bank.  *See* Stip. of Fact ¶ 68 at 10.

15.     On March 5, 2010, Prunty withdrew $54,198.01, *see* Stip. of Fact ¶ 69 at 10, without permission from this Court or prior knowledge of the Chapter 7 Trustee.

16.     Without permission from this Court or prior knowledge of the Chapter 7 Trustee, on December 28, 2010 Prunty withdrew the remaining funds $25,611.07 (representing principal and accumulated interest) and applied the funds to the mortgage secured by the Fauquier Property, *see* Stip. of Fact ¶ 70 at 10.

17.     On March 10, 2011, Prunty filed a proof of claim (Claim # 11-1) asserting an unsecured claim of $1,115,015.06.  Stip. of Fact ¶ 71, at 10.

18.     On May 27, 2011, the Trustee first brought the unauthorized sale of the estates interest in the Midlothian Property to the Court's attention in his objection to Prunty's claim. *See Trustee's Objection to Claim # 11 Filed by Deborah Prunty* § I(A), at 4 (docket # 44).

19.     On June 14, 2011, Prunty filed an amended proof of claim (Claim # 11-2) increasing her unsecured claim from $1,115,015.88 to $1,487,226.78.  Stip. of Fact ¶ 72, at 10

20.     On August 9, 2011, Prunty filed *Deborah J. Prunty's Response to Trustee's Objection to Proof of Claim # 11* ("Prunty's Response") (docket # 67), in which she stated:

> Prunty admits that on or about February 23, 2010, she sold the Rosebay Forest Drive property.  Prunty denies that she needed permission to sell the property because she was the record owner of the property and the Trustee had not filed a *lis pendens*.  **Prunty segregated one-half of the net proceeds from the sale of the property in a bank account pending the outcome of this litigation.** . . .

*Id.* ¶ 3, at 1 (emphasis added).

21.  Based on Prunty's Response asserting that she "segregated one-half of the net proceeds from the sale of the property in a bank account pending the outcome of this litigation", on August 10, 2011, the Trustee sent a letter to Prunty's Counsel making a formal demand that Prunty immediately turn-over the sum of $39,842.50 plus interest, representing proceeds from the sale of the bankruptcy estate's interest in the Midlothian Property.  *See* Tr.'s Ex. 124.

22.  Two days later, Prunty filed *Deborah J. Prunty's Amended Response to Trustee's Objection to Proof of Claim # 11* ("Prunty's Amended Response") (docket # 69), in which she confesses that the funds are not in a segregated bank account pending the outcome of this litigation:

> Prunty admits that on or about February 23, 2010, she sold the Rosebay Forest Drive property.  Prunty denies that she needed permission to sell the property because she was the record owner of the property and the Trustee had not filed a *lis pendens*.  Prunty segregated one-half of the net proceeds from the sale of the property in a bank account pending the outcome of this litigation.  **Then, on or around December 28, 2010, Prunty applied these funds to the existing balance owed on the mortgage secured by the Jocelyn Court property.  Prunty took this action because the interest she received on the deposited funds was less than the interest rate she was paying on the mortgage.  Prunty took this action after consulting with her attorney.**

*Id.* ¶ 3, at 1-2 (emphasis added).

23.  Prunty's Counsel also sends a letter to the Trustee stating "[Prunty] does not have the funds to turn over to you.  Moreover, even if she had the funds, she would still not turn them over because her claims of setoff and recoupment have not been resolved."  *See* Tr.'s Ex. 125.

24.  Prunty also tried to take control of the claims pool by objecting to the proof of claim of Robert and Barbara Morris (debtor's step-father and mother) and filing a massive claim (to which the Trustee objected).  The Court over-ruled Prunty's objection to Morris' claim.

25.      While the Trustee's objection to Prunty's claim is pending, the unsecured claims

are as follows:

| | | |
|---|---|---|
| Unrelated creditors (Claim ## 1-9) [2] | $   11,399.21 | .75% |
| Robert & Barbara Morris (Claim # 10) | 50,500.42 | 3.25% |
| Sub-total | $   61,799.63 | 4.00% |
| Deborah J. Prunty (Claim # 11, as amended) [3] | 1,487,226.78 | 96.00% |
| Total | $1,549,026.41 | 100.00% |

*See* Stip. of Fact ¶ 73 at 10,

26.      The Midlothian Property and the Fauquier Property are the only possible assets of

the bankruptcy estate that might provide a dividend to the unsecured creditors.  The Midlothian

Property and the Fauquier Property are separate assets – the Trustee could ultimately abandon

one property or the other if it was burdensome to the estate.  While the Trustee believes both

Properties are valuable to the estate, he would not have invested proceeds from the Midlothian

Property in the Fauquier Property as Prunty did.  The Trustee actually wanted to use proceeds

from the Midlothian Property to administer the Fauquier Property (including paying expenses to

market the Fauquier Property and possibly engage an appraiser).

## ARGUMENT

## I.    THE COURT SHOULD LIMIT PRUNTY'S PRE-PETITION CLAIM TO THE AMOUNT OF ALLOWABLE AVOIDED TRANSFERS.

Prunty has two claims: one as a result of the judgment in the adversary proceeding, *see*

FED. R. BANKR. P. 3002(c)(3), and another for amounts in excess of the judgment in the

adversary proceeding.

---

[2] Excludes claim # 3, which is secured by the Fauquier Property (aka Jocelyn Court).
[3] Prunty's Amended Claim includes "Legal Fees incurred through 4/14/11" in the amount of $59,890.89.  *See* Claim # 11-2 at 2.  The Trustee observes that when you add Prunty's legal fees subsequent to 4/14/11, what she has spent for her defense will exceed the amount necessary to pay the other unsecured claims in full.

**A.      Prunty's allowable claim as a result of the judgment in the adversary proceeding cannot include amounts for contribution because she expressly waived such in the adversary proceeding's Stipulations of Fact.**

Prunty's method of computing her claim is flawed.  The Court held that "The Debtor owned an undivided one-half interest in the Properties prior to transfer." *Terry v. Paschall (In re Paschall)*, Adv. P. No. 08-03049-KRH, *Memo. Op.* at 11 (Feb. 20, 2009) (docket # 27).  By Order entered February 20, 2009, the Court granted the Trustee Summary Judgment on Count I, which avoided the preferential transfer under Bankruptcy Code § 547, and Count V, which recovered such interests in the property for the benefit of the estate under Bankruptcy Code § 550.  *Terry v. Paschall (In re Paschall)*, Adv. P. No. 08-03049-KRH, *Order* (Feb. 20, 2009) (docket # 28).  After entry of the Order, the obligation for which the preferential transfer was made is revived and may be asserted against the bankruptcy estate under 11 U.S.C. § 502(h) because the creditor lost the value of the transfer.  Accordingly, as of the Petition Date, Prunty had a claim against Paschall (pursuant to the Final Decree of Divorce which incorporated the 2005 Marital Agreement) for the value of the avoided preferential transfer.

The Proof of Claim that Prunty could timely file under Federal Rule of Bankruptcy Procedure 3002(c)(3) was limited to the value of the judgment recovered under Bankruptcy Code § 550 (*i.e.*, the value of the avoided preferential transfers consisting of an undivided one-half interest in the Properties as of the Petition Date).  The Court must look to the adversary proceeding to value the judgment.  In the adversary proceeding, Prunty waived all right of contribution.  *See Terry v. Paschall (In re Paschall)*, Adv. P. No. 08-03049-KRH, Stipulation of Fact ¶ 71, at 10 (**"If the transfers are avoided, Prunty is not claiming any 'right of contribution' from the debtor in this adversary proceeding."**) (emphasis added) (docket # 17).

**B.      Prunty is time-barred from seeking contribution in the main case.**

Prunty knew about this bankruptcy since at least April 11, 2008 (the date served with the Adversary Proceeding Complaint), but did not file a Proof of Claim until March 10, 2011.  To the extent Prunty's claim is for amounts in excess of the value of the undivided one-half interest in the Properties as of the Petition Date, that portion of Prunty's claim is time-barred by the doctrine of laches.  This is analogous to a creditor that holds a claim resulting from an avoided security interest.  While the creditor is allowed to file a claim after the avoidance of the security interest, the creditor's unsecured claim will only be timely up to the amount of the avoided security interest; the creditor will still be time-barred from filing a deficiency claim.  *See* 9 COLLIERS ON BANKRUPTCY ¶ 3002.03[4], at 3002-13.

**II.      THE DEFENSES OF RECOUPMENT AND SETOFF DO NOT HELP PRUNTY.**

**A.      Prunty has unclean hands.**

The Trustee complains of three transgressions, each of which on its own is significant.

**1.      Prunty willfully violated the Automatic Stay by <u>selling</u> the bankruptcy estate's interest in the Midlothian Property without the approval of this Court or disclosure to the Chapter 7 Trustee.**

By order entered February 20, 2009, this Court held, *inter alia*, that the bankruptcy estate held an interest in the Midlothian Property.  Despite numerous appeals, that Order was never overturned.  Nevertheless, Prunty sold the Midlothian Property without permission from this Court or prior knowledge of the Chapter 7 Trustee.  Prunty's action was contemptuous of this Court, its ruling, and 11 U.S.C. § 362 (the "Automatic Stay"), including but not limited to § 362(a)(3) (exercising control over property of the estate) and § 362(a)(6) (any act to collect or recover a claim).

"Prunty denies that she needed permission to sell the property because she was the record owner of the property and the Trustee had not filed a *lis pendens*."  Prunty's Amended Response ¶ 3 at 1; Prunty's Response ¶ 3 at 1.  The Trustee asserts that whatever title Prunty had, this Court's ruling made clear that the bankruptcy estate had an interest in the Midlothian Property. Being record owner does not justify Prunty's disregard of this Court's ruling and willful violation of the Automatic Stay.

Moreover, the Trustee recorded a *Memorandum of Lis Pendens* on the Midlothian Property in the Clerk's Office of the Circuit Court for Chesterfield County, Virginia on March 25, 2008, Instrument #14719, but it was docketed under Richard Paschall rather than the name of the record owner so it did not prevent the sale.  However, whether the Trustee takes steps to thwart a violation of the automatic stay or not, does not justify Prunty's disregard of this Court's ruling and willful violation of the Automatic Stay.

> **2.    Prunty willfully violated the Automatic Stay by subsequently <u>converting the proceeds</u> from the sale of the bankruptcy estate's interest in the Midlothian Property to her own use.**

After Prunty's unauthorized post-petition sale of the bankruptcy estate's interest in the Midlothian Property on February 23, 2010, the transaction settled into a state of repose when Prunty deposited the proceeds into a segregated account.  *See* Prunty's Amended Response ¶ 3 at 1.  Then ten months later, on or about December 28, 2010, which is after Prunty lost on her appeal to the Fourth Circuit and after filing her Petition for Writ of Certiorari to the Supreme Court, without permission from this Court or prior knowledge of the Chapter 7 Trustee, Prunty converted the proceeds for her own use.  *See id.*  Prunty's action was contemptuous of this Court, its ruling, and 11 U.S.C. § 362 (the "Automatic Stay"), including but not limited to § 362(a)(3) (exercising control over property of the estate) and § 362(a)(6) (any act to collect or recover a

9

claim), and § 362(a)(7) (setoff).  The fact that Prunty converted the funds after consulting with

her counsel, *see id.* ¶ 3 at 2 ("Prunty took this action after consulting with her attorney."), makes

it even more reprehensible.

### 3.    Prunty attempted to cover-up her actions by filing documents with the Court that were false or misleading.

Prunty's Response stated "Prunty segregated one-half of the net proceeds from the sale of

the property in a bank account pending the outcome of this litigation."  Prunty's Response ¶ 3 at

1.  But at the time Prunty's Response was filed that statement was either false or misleading in

two respects.  First, Prunty did not segregate one-half of the $79,685.01 check from the

Settlement Agent, but rather immediately helped herself to $54,198.12.  Second, by the time

Prunty's Response was filed she had already converted all of the remaining funds to her own use.

*Compare id.* (Prunty's Response filed August 9, 2011, asserting one-half of proceeds in a

segregated account), *with* Prunty's Amended Response ¶ 3 at 1-2 (admitting segregated account

was liquidated by December 28, 2010).  It was only when the Trustee's demanded the sum of

$39,842.50 (one-half of the $79,685.01 check from the Settlement Agent) plus interest that the

truth started to come out in Prunty's Amended Response.

The fact that Prunty's Counsel was consulted before the segregated account was

liquidated means Prunty's Counsel should have known Prunty's Response was false or

misleading at the time that it was filed.  *See* Prunty's Amended Response ¶ 3 at 2 ("Prunty took

this action after consulting with her attorney.").  Prunty is bound by the actions of her attorney.

### B.    The Court should not apply the equitable doctrines of recoupment or setoff to allow Prunty to shelter her contempt of this Court and its ruling, her willful violations to the automatic stay, and her attempted cover-up.

> The commencement of a case under the Bankruptcy code triggers the automatic stay provisions of section 362.  More

> specifically, section 362(a)(7) expressly enjoins "the setoff of any debts owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." The wording of section 362(a)(7) mirrors the language of section 553(a).

*See* 5 COLLIERS ON BANKRUPTCY ¶ 553.06[1], at 553-66 – 66.1 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) (footnotes omitted).

"For as long as the automatic stay remains in effect, a creditor wishing to exercise its right of setoff must seek and obtain relief from the stay." *Id.* ¶ 553.06[1][a], at 553-67. Prunty never obtained relief from the automatic stay before she sold the bankruptcy estate's interest in the Midlothian Property, nor when she converted the proceeds.

Recoupment and setoff in bankruptcy are permissive rather than mandatory. Application of these equitable doctrines is committed to the sound discretion of the bankruptcy court.

> If the creditor's liability to the debtor is based upon the willful conversion of the debtor's property, courts have also denied setoff. The basis for this conclusion is that, if the debtor had gratuitously transferred the property to the creditor, the property would have been recoverable as a preference or fraudulent transfers, and the creditor should not be able to obtain a better result by insulating the recovery through setoff.

*Cf.* 5 COLLIERS ON BANKRUPTCY ¶ 553.03[3][e][iii], at 553-44 (footnotes omitted). The Court should not permit recoupment or setoff to allow Prunty to shelter her contempt of this court and its ruling, her willful violations to the automatic stay, and her attempted cover-up.

## C.    Recoupment is not applicable.

In general, courts have concluded that the doctrine of recoupment should be narrowly construed in bankruptcy cases. 5 COLLIERS ON BANKRUPTCY ¶ 553.10[3], at 553-105. The key question in most recoupment cases is whether the relevant obligations constitute part of the "same transaction." *Id.* ¶ 553.10[1], at 553-101. Prunty has failed to explain what the relevant

11

obligations are and how they constitute part of the "same transaction."  Prunty cannot exercise recoupment with the claim that arises from avoidance of a preferential transfer.  *Cf. infra* § C(2)(i) (*citing* 5 COLLIERS ON BANKRUPTCY ¶ 553.03[3][e][v], at 553-44.1 – 44.2).

Moreover, Prunty is arguing the doctrine should be applied to justify her willfully violating the automatic stay in an attempt to thwart the trustee's collection of an avoided preferential transfer.  The Court should not apply the equitable doctrine of recoupment to thwart fundamental policies and provisions in the Bankruptcy Code, nor willful violations of the automatic stay.

### D.     Setoff is not applicable.

#### 1.     Prunty has failed to identify what non-bankruptcy law created her setoff right.

#### 2.     Bankruptcy Code § 553 restricts Prunty's setoff right.

For a creditor to exercise its setoff rights under § 553, it must meet four conditions:

    i.   the creditor must hold a pre-petition claim against the debtor;

    ii.  the creditor must owe a debt to the debtor that arose pre-petition;

    iii. the obligations are mutual;

    iv.  the obligations are valid and enforceable.

*See* 5 COLLIERS ON BANKRUPTCY ¶ 553.01[1], at 553-7 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009).

#### i.     Prunty does not have a prepetition claim against the debtor that would allow her to exercise setoff rights.

Prunty cannot exercise setoff with the claim that arises from avoidance of a preferential transfer.

> The general rule is that, in an action by a trustee to recover money paid or property transferred to a creditor under the preference provisions of the [Bankruptcy] Code, the creditor cannot offset its liability against either a separate debt owed to it by the debtor or

> the original liability on account of which the preferential transfer
> was made. The reasoning for the rule is that allowing the creditor
> to offset the amount of the transfer would merely continue the
> preference, thereby rendering the preference statute useless
> because the preference would not become available for *pro rata*
> distribution to all creditors.

5 COLLIERS ON BANKRUPTCY ¶ 553.03[3][e][v], at 553-44.1 – 44.2 (footnotes omitted).

Prunty does not have a claim for improvements, mortgage payments and contribution

prior to the Petition Date because all such unrecorded liens are void against the Trustee. *See* 11

U.S.C. § 544(a)(1) & (3); *Houston v. McCluney*, 8 W.Va. 135 (1874).

### ii.     Prunty does not owe a debt to the debtor that arose prepetition.

Prunty cannot exercise setoff rights because she did not owe the debtor a prepetition debt.

The only debt that Prunty owes to the debtor arose post-petition when she converted proceeds

from the Midlothian Property.

### iii.    The obligations are not mutual.

This Court entered an order in the adversary proceeding that avoided a preferential

transfer from debtor to Prunty, so that as of the petition date, the bankruptcy estate had an

interest in the Midlothian Property and Fauquier Property, which when coupled with the

Trustee's strong arm powers under Bankruptcy Code § 544 as a hypothetical lien creditor and

bona fide purchaser, gave the bankruptcy estate a one-half interest in the Properties. The

obligations are not mutual because Prunty's prepetition claim (if any) is against Paschall,

whereas the Trustee is a third-party hypothetical lien creditor and a bona fide purchaser of real

estate for value. Prunty's prepetition claim against Paschall is an unrecorded lien that is void

against the Trustee under Bankruptcy Code § 544 and Virginia Code § 55-96. *See Mayer v.*

*United States (In re Reasonover)*, 236 B.R. 219, 232 (Bankr. E.D. Va. 1999) ("Under Virginia

recording statutes, unrecorded conveyances and deeds of trust are 'void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors.' VA. CODE ANN. § 55-96(A)(1).  Furthermore, it is well established in Virginia that a bona fide purchaser takes property free of any latent equity against it."); *Houston v. McCluney*, 8 W. Va. 135; 1874 W. Va. LEXIS 59 (1874) (holding under Virginia Code chapter 118 (predecessor to Virginia Code § 55-96) that unrecorded equitable lien in favor of co-tenant is unenforceable against lien creditor and bona fide purchasers).

> ### iv.    The Trustee objects to setoff to the extent Prunty's claim is disallowed.

The Trustee's objection to Prunty's Claim is still pending.  Prunty is not entitled to setoff to the extent her claim is disallowed.  *See* 11 U.S.C. § 553(a)(1).

### E.    Setoff taken in violation of the automatic stay is generally void.

> Under sections 553 and 362(a)(7), courts have consistently held that a setoff taken in violation of the automatic stay is void and without effect.  Similarly, a majority of courts have held that other actions taken in violation of the automatic stay are also void. A minority of circuits have found that these actions are merely voidable.

5 COLLIERS ON BANKRUPTCY ¶ 553.06[1][b][i], at 553-68 (footnotes omitted).

### F.    Prunty's reliance on *Strumpf* is misplaced.

Prunty's reliance on *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S. Ct. 286 (1985) is misplaced.  In *Strumpf*, the Court recognized the limited right of an administrative hold on an account where the petitioner did not permanently reduce the respondent's account balance by the amount of the hold.  *See Strumpf*, 516 U.S. at 19, 116 S. Ct. at 289.  Prunty exceeded this limited right by taking an act to accomplish the setoff without first seeking relief from the automatic stay.  *See id.*

14

### III.   THE COURT SHOULD NOT ALLOW PRUNTY'S CLAIM FOR ADMINISTRATIVE EXPENSE.

Prunty's proof of claim includes amounts for post-petition expenses.  Post-petition amounts are more properly filed as application for administrative expense rather than as a proof of claim.  *See In re Sage Richmond, L.L.C.*, 285 B.R. 364, 365 (Bankr. E.D. Va. 2002) (Tice, C.J.) ("An application for an administrative expense is not the same as a proof of claim and should not be filed as such.")  However, there is some authority for the court to allow a creditor to characterize a proof of claim as a request for administrative expense.  *Id.* (*citing* 4 COLLIER ON BANKRUPTCY ¶ 503.02[1][a] (Lawrence P. King ed., 15th ed. Rev. 2001)).

### A.   The Court should deny all of Prunty's claim for administrative expenses because she failed to get prior approval from the Court.

Procedurally, administrative expenses must be approved by the court *prior* to the claimant expending the funds.  *Mitchellv. Parker (In re Parker)*, No. 3:08cv373, 2011 U.S. Dist. Lexis 85157 **18-19 (W.D.N.C. 2011) (*citing In re Beale*, 358 B.R. 744 (Bankr. N.D. Ill. 2006)); *accord Ruck v. Tavenner (In re Smoot)*, 2006 U.S. Dist. Lexis 22493, 2006 WL 848120 (E.D. Va. 2006) (the general rule requires creditors to obtain prior approval from a court or the trustee before claiming costs as administrative expenses under 11 U.S.C. § 503(b)).

### B.   Nunc Pro Tunc relief is not appropriate.

There is an equitable exception to the general rule that allows the court to issue nunc pro tunc orders in unusual, unique or exceptional circumstances.  While the Fourth Circuit has been relatively silent on this issue, the Second Circuit was somewhat of a pioneer in crafting modern jurisprudence on the concept of nunc pro tunc approval of post-petition financing, shedding light on the appropriate circumstances for invoking this equitable exception to the general rule.  *(In re Smoot)*, 2006 U.S. Dist. Lexis 22493, 2006 WL 848120 (E.D. Va. 2006).  Over sixty years ago,

the Second Circuit explained that this power should be "cautiously exercised" and that "only a foolhardy lender will attempt to make it serve as a substitute for the proper authorization." *Id.* (*citing In re Am. Cooler*, 125 F.2d 496, 497 (2d Cir. 1942)).  More recently, the Second Circuit made clear that such retroactive authorization of administrative expenses "should only be granted in unusual circumstances." *Id.* (*citing Photo Promotion Assocs., Inc. v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*, 881 F.2d 6, 9 (2d Cir. 1989)).  Prunty did not seek prior approval of the Court or the trustee before paying the expenses, and has not established the existence of unique or exceptional circumstances that would justify this Court in issuing a nunc pro tunc Order granting her claim for administrative expenses.

### C.      The Court should deny all of Prunty's claim for administrative expenses occurring after April 11, 2008.

If the Court grants nunc pro tunc approval of Prunty's request for administrative expenses, it should be limited to the period between June 3, 2007 (the "Petition Date") and April 11, 2008 (the date the Complaint was served on Prunty).  On April 11, 2008, Prunty had notice that the bankruptcy estate asserted an interest in the property.  Allowing Prunty administrative expenses after April 11, 2008 would be against public policy, as it would reward those having possession of estate property for their refusal to allow the trustee to take possession of and administer property of the estate.

### D.      No Administrative Expenses should be allowed unless it preserved the estate.

Substantively, administrative expenses may be allowed for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1).  The Fourth Circuit has held that "actual, necessary costs and expenses of preserving the estate" are costs: 1) that arise from a post-petition transaction between the party claiming the administrative expense and the trustee,

16

and 2) in which the party seeking the allowance of the administrative expense has provided consideration benefitting the bankruptcy estate. *Ruck v. Tavenner (In re Smoot)*, 2006 U.S. Dist. Lexis 22493, 2006 WL 848120 (E.D. Va. 2006) (*citing Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999), *appeal dismissed*, 194 Fed. Appx 96 (4th Cit. 2006); *Stewart Foods v. Broecker (In re Stewart Foods)*, 64 F.3d 141, 145 n.2 (4th Cir. 1995).  It is important to note the Fourth Circuit's recognition that the Bankruptcy Code provision allowing for the payment of administrative expenses out of the estate must be "narrowly construed." *Id.* (*citing Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999) (referring to 11 U.S.C. § 503(b)(1) (2000)). Furthermore, "the modifiers 'actual' and 'necessary' must be observed with scrupulous care." *Id.* (internal quotations and citation omitted).

### 1. Prunty's claim for administrative expense did not arise in a transaction with the Trustee.

The first requirement for an expense to qualify as administrative is that the claimed expense must arise from a transaction with the Trustee. *Id.* at *13.  "This rule exists because the Bankruptcy Code makes the trustee the party responsible for administering and preserving the estate, and Congress recognized administrative expenses as an inducement for parties to deal with the trustee." *In re Amireh*, 05-12358-RGM, 2008 Bankr. Lexis 15, *8 (Bankr. E.D. Va. 2008) (citations omitted).  Prunty's claim seeks repayment for expenses associated with transactions *not* involving the Trustee.  Therefore, the requirement for qualifying as an "actual, necessary cost and expense" is not satisfied, and request for payment fails. *See Smoot*, 2006 U.S. Dist. Lexis 22493, 2006 WL 848120, *4 (disallowing a request for an administrative expense

17

because costs sought were associated with transactions not involving the trustee); *Amireh*, 2008

Bankr. Lexis 15, *8 (same).

### 2.     Prunty's claim for administrative expense did not benefit the estate.

The second requirement for an expense to qualify as administrative is that the claimed

expense must provide a benefit to the bankruptcy estate.  *Id.*

### i.     Prunty's improvements did not benefit the estate.

It has long been a principle of law in Virginia that:

> [g]enerally, a joint tenant who at his own expense has
> constructed permanent improvements on property owned in
> common is entitled in a partition suit to compensation for the
> improvements, even in the absence of a showing that his cotenant
> assented thereto.  The rule is founded on the desire of the court to
> do justice and to prevent unjust enrichment of one cotenant at the
> expense of the other.   But in a partition suit the amount of
> compensation, in absence of an agreement with the other tenant or
> tenants, is limited to the amount by which the value of the property
> owned in common has been enhanced by the improvement.

*Benveniste v. Christensen Family, LP*, 278 Va. 317, 323, 682 S.E.2d 529, 531 (2009) (*quoting*

*Jones v. Jones*, 214 Va. 452, 454-55, 201 S.E.2d 603, 605 (1974)).   Where property is not

susceptible of partition and must be sold to divide the proceeds, the coparcener who made repairs

and permanent improvements should receive out of the proceeds that amount by which the

property, at the date of the sale, remains enhanced in value from the improvements, not their

original cost.   5A M.J. Cotenancy § 27 (*citing Ward v. Ward*, 40 W. Va. 611, 21 S.E. 746

(1895)).  Prunty has not met her burden of proof that post-petition improvements have increased

the value of the Properties.   Thus, Prunty is not entitled to an administrative claim for

improvements.

### ii.    Prunty is not entitled to contribution for operating expenses.

With respect to the Midlothian Property, the key is the 2005 Marital Agreement, which was incorporated into the Final Decree of Divorce. *See Jenkins v. Jenkins*, 180 S.E.2d 516, 517-18 (Va. 1971) ("the key to our inquiry is the final divorce decree").   Under 2005 Marital Agreement, the Debtor was ousted from the Midlothian Property and Prunty was expressly responsible for all payments, repairs, taxes, insurance and any other expenses associated with the property.[4]  Because Prunty was personally obligated to pay these expenses, payment provided no benefit to the estate.

With respect to the Fauquier Property, the 2005 Marital Agreement only contemplated the Debtor paying a share of the expenses as rent if he resided in the Property.  However, the Debtor did not reside in the Fauquier Property post-petition.  The 2005 Marital Agreement effectively ousted the Debtor from the Fauquier Property and contemplated that Prunty would become solely entitled to rent income and responsible for the expenses.  Yet even if it did not, where a co-tenant is in exclusive possession of the property, he is liable to account for its reasonable rental value to his co-tenant. *Adkins v. Adkins*, 117 Va. 445, 448-49, 85 S.E. 490 (1951).  Where a tenant in common uses the property to the total or partial exclusion of his co-tenants, an accounting to such co-tenants may be had, under the statute, for so much of the rents and profits as the tenant in possession and use may have received or should be charged with if

---

[4] The 2005 Marital Agreement states in the relevant part:

> The parties further stipulate that they jointly own rental property, more specifically described as 15018 Rosebay Forest Drive, Richmond, Virginia, . . . . The parties agree that the Wife shall become the exclusive owner of such property and that the Husband shall relinquish his interest in the marital property to the Wife. . . . Wife shall be responsible for all payments, repairs, taxes, insurance and any other expenses associated with said property and agrees to hold Husband harmless of the same.

2005 Marital Agreement ¶ 15(a)(2).

such possession and use had been exclusive; and the best measure of his accountability is a fair rent of the property so occupied and used by him. *Id.*; Va. Code § 8.01-31. Prunty's tax returns and supporting documents for her Proof of Claim indicate that she occupied 65% of the Fauquier Property and rented out the remaining 35% of the Fauquier Property for a net profit. Prunty owes the Trustee for use of the bankruptcy estate's one-half interest in the Fauquier Property, not the other way around.

### iii.    Prunty is not entitled to contribution for loan payments.

Prunty was the sole obligor on the loan for the Midlothian Property. *See* Stipulation of Fact ¶¶ 30 & 31, at 5. The estate derived no benefit from Prunty's loan payments on the Midlothian Property, as the Debtor was not obligated on the noted. Although the Debtor was obligated on the deed of trust, the court should marshall the assets so that Prunty's interest in the Midlothian Property is used to pay her obligations, and the bankruptcy estate's interest in the Midlothian Property is used to pay the Debtor's creditors.

For both Properties, interest is an operating expense and, for reasons explained above, is not reimbursable in this case.

With respect to principal payments, under the 2005 Marital Agreement (as incorporated into the Final Decree of Divorce), the indebtedness to the banks became Prunty's sole responsibility; thus any post-petition principal payments are entirely for Prunty's indebtedness, not the bankruptcy estate's indebtedness.

### E.    The Court should disallow Administrative Expenses that benefit Prunty.

Payments that are made for the benefit of the co-owner are not allowable administrative expenses. However, if the Court allows Prunty to recover these expenses, at most she only should get one-half of the payment amounts, not the entire amounts.

**WHEREFORE**, the Chapter 7 Trustee respectfully requests that the Court enter an Order consistent with the above, and for such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 20th day of September, 2011.

Roy M. Terry, Jr., Chapter 7 Trustee,
By Counsel

/s/ John C. Smith
Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
Brittany J. Berlauk, VSB No. 80131
DurretteCrump PLC
1111 E. Main St., 16th Floor
Richmond, Virginia 23219
☎ 804.775.6900
🖹 804.775.6911
Counsel for Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Ann M. Callaway, Esquire
> Ann M. Callaway, P.C.
> 15 Garrett Street
> Warrenton, VA 20186
> Counsel for Deborah J. Prunty and
> Deborah J. Prunty Living Trust
>
> Roy M. Terry, Jr., Esquire
> DurretteCrump, P.C.
> 1111 E. Main St., 16th Floor
> Richmond, VA 23219
> Chapter 7 Trustee

And I hereby certify that I have mailed the document by U.S. mail to the following non-filing users:

> Richard D. Paschall
> P.O. Box 228
> Chesterfield VA 23832
>
>                 \s\ John C. Smith

F:\RMT\Chapter 7 Trustee\07-32048 Paschall, Richard D\Bankr ED Va\07-32048\Tr. Obj to Prunty Claim\Memorandum of Points and Authority.doc