IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:        RICHARD D. PASCHALL,                                   Case No. 07-32048
                                                                    Chapter 7
                      Debtor.

_____

DEBORAH J. PRUNTY (f/k/a Deborah P. Paschall),

              Claimant,
v.                                                                  Contested Matter

ROY M. TERRY, JR., Chapter 7 Trustee,

              Objector.

_____


**<u>MEMORANDUM OPINION</u>**

Before the Court is the objection of Roy M. Terry, Jr. (the "Trustee") to claim number 11
(the "Claim") filed by Deborah J. Prunty ("Prunty").  The Trustee seeks to disallow the Claim in
its entirety on the grounds that the Claim is barred by § 502(d) of the Bankruptcy Code.[1]  In the
alternative, the Trustee seeks to limit any Claim filed by Prunty to the amount of transfers
avoided pursuant to § 547(b).  Following a hearing conducted on September 27, 2011, the Court
announced that it would permanently disallow the claim in part and temporarily disallow the
claim in part for the reasons set forth in this memorandum opinion.[2]

---

1  Unless otherwise specified, all code sections referenced in this opinion are sections from Title 11 of the United
States Code.  11 U.S.C. §§ 101 *et seq.* (2011) (the "Bankruptcy Code").

2  A hearing on an objection to a claim is treated as a contested matter and Federal Rule of Bankruptcy Procedure
9014 applies.  *See In re Fleming,* 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008).  As such, certain rules
under part VII of the Federal Rules of Bankruptcy Procedure are applicable, including Rule 7052.  *See id.*  This
memorandum opinion sets forth the Court's findings of fact and conclusions of law pursuant thereto.  Findings of
fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when
appropriate.  *See* Fed. R. Bankr. P. 7052.

## Jurisdiction

The Court has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C.

§§ 157(a) and 1334 and the general order of reference from the United States District Court for

the Eastern District of Virginia dated August 15, 1984.   This is a core proceeding under 28

U.S.C. § 157(b)(2)(B) in which final orders or judgments may be entered by a bankruptcy court.

Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## Facts

Prunty and Richard D. Paschall (the "Debtor") were married in San Jose, California, on

June 29, 2002 (Prunty and the Debtor together, the "Couple").   The Couple decided to move to

Virginia, and Prunty arranged for the sale of the home she owned in San Jose.   Prunty received

net proceeds of $586,285.73 from the sale of her home.   In the summer of 2003, Prunty

contracted to purchase real property at 7104 Jocelyn Court, Warrenton, Virginia (the "Fauquier

County Property").   Prunty paid the entire purchase price for the Fauquier County Property using

the proceeds she had received from the sale of her home in San Jose and other separate property

investments owned prior to marriage.   By deed dated January 29, 2004, the Fauquier County

Property was conveyed to the Couple as tenants by the entirety.   The deed was recorded in

Fauquier County on February 2, 2004.[3]

During the summer of 2004, the Couple decided to purchase real property at 15018

Rosebay Forest Drive, Midlothian, Virginia 23112 (the "Midlothian Property").   The Midlothian

Property was owned by the Debtor's mother and stepfather.   The Couple spent $25,000

remodeling the Midlothian Property so that it could be rented.   By deed dated September 1,

---

[3]  Following the closing, the Couple obtained a $250,000 loan from Southern Trust Mortgage LLC that was secured
by a deed of trust on the Fauquier County Property.

2

2004, the Midlothian Property was conveyed to the Debtor and Prunty as tenants by the entirety.

The deed was recorded in Chesterfield County on September 8, 2004.  Prunty paid $42,767.26

from her premarital assets at closing on the Midlothian Property, and she financed the balance of

the purchase price through Southern Trust Mortgage LLC.  Prunty was the only borrower on the

$183,200 promissory note with Southern Trust Mortgage, LLC.  The promissory note was

secured by a deed of trust given by the Couple on the Midlothian Property.

The Couple executed a post-marital agreement on March 2, 2005 (the "Marital

Agreement").  The Marital Agreement provided that Prunty would become the exclusive owner

of both the Fauquier County Property and the Midlothian Property (together, the "Properties"),

which were then titled in the names of both Prunty and the Debtor as tenants by the entirety.  The

Debtor agreed to convey his interest in the Properties by quitclaim deeds to Prunty as Trustee of

the Deborah J. Prunty Living Trust (the "Trust") in exchange for certain cash payments.[4]  The

Marital agreement also included a broad mutual waiver of all claims by and between the parties

that arose before or after the date of the Marital Agreement.  Soon thereafter, the Couple entered

into a Buyout Agreement under which Prunty paid the Debtor $72,100, representing all sums due

to him under the Marital Agreement and the Buyout Agreement (together, the "Marital

Agreements").

On January 30, 2006, Prunty filed for uncontested divorce in Fauquier County, Virginia.

In accordance with the terms of the Marital Agreements, the Couple conveyed to the Trust their

joint interests in the Fauquier County Property and the Midlothian Property by quitclaim deeds

dated August 23, 2006.  The Debtor and Prunty were divorced by a final decree of divorce

entered in Fauquier County Circuit Court on September 13, 2006 (the "Final Decree of

---

[4]  Although the Debtor agreed to convey his interest in the Properties to Prunty when the parties entered into the
Marital Agreement in March of 2005, the quitclaim deeds were not executed and recorded until August of 2006.

Divorce"). The Final Decree of Divorce incorporated the terms of the Marital Agreements including the broad mutual release provisions. Once the divorce was final, the Trust conveyed its interest in the two Properties to Prunty.

On June 3, 2007 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. Roy M. Terry, Jr. was appointed interim Chapter 7 Trustee and continues to serve as the Trustee in this case. *See* 11 U.S.C § 702(d). By letter dated January 16, 2008, the Trustee notified Prunty of the commencement of the Debtor's bankruptcy case and advised Prunty that the transfers of the Properties pursuant to the Final Decree of Divorce were avoidable under Chapter 5 of the Bankruptcy Code. The Trustee offered to settle the matter without filing an adversary proceeding if Prunty paid the Trustee $107,400. Prunty declined. On April 7, 2008, the Trustee initiated the adversary proceeding *Terry v. Paschall (In re Paschall)*, Adv. Proc. No. 08-03049 (Bankr. E.D. Va. 2008) (the "Adversary Proceeding").

### The Adversary Proceeding

A hearing in the Adversary Proceeding was held January 8, 2009, on cross-motions for summary judgment filed by the Trustee and Prunty. By order entered February 20, 2009 (the "Court's February 20, 2009, Order"), this Court, inter alia, granted the Trustee's motion for summary judgment on Counts I and V of the complaint, avoiding the transfers of the two Properties from the Couple to Prunty as preferential transfers under § 547(b) and reverting title in the properties back to the Couple as tenants by the entirety. The Court also found that the Final Decree of Divorce had the effect of converting the Couple's tenancy by the entirety estate into a tenancy in common, thereby allowing the Trustee to recover the Debtor's interest in the Properties under § 550. *See Terry v. Paschall (In re Paschall)*, 403 B.R. 366 (Bankr. E.D. Va. 2009).

Prunty appealed the Court's ruling to the U.S. District Court.[5]  The District Court affirmed the decision of this Court by order entered June 1, 2009.  *See Prunty v. Terry (In re Paschall)*, 408 B.R. 79 (E.D. Va. 2009).  Prunty then filed a Petition for Permission to Appeal the District Court's ruling to the Fourth Circuit Court of Appeals.  By Order entered July 14, 2009, the Fourth Circuit granted the Petition and transferred the case to its regular docket.  *See Prunty v. Terry*, No. 09-198 (4th Cir. 2009).

While Prunty's appeal was pending in the Fourth Circuit, Prunty decided to take matters into her own hands.  She sold the Midlothian Property on or about February 23, 2010, without the permission of this Court and without the prior knowledge of the Trustee.  Prunty unilaterally applied a portion of the sales proceeds to satisfy the outstanding balance on her $183,200 promissory note with Southern Trust Mortgage LLC for which she was solely liable.  Prunty deposited the remaining sales proceeds in the amount of $79,685 into a high performance money market account at Wachovia Bank (the "Money Market Account").  On March 5, 2010, Prunty withdrew $54,198.01 of the sales proceeds from the Money Market Account.  On December 28, 2010 Prunty withdrew the balance of the sales proceeds from the Money Market Account and applied them to the mortgage on the Fauquier County Property.

By unpublished per curiam opinion and Judgment entered on July 16, 2010, the Fourth Circuit affirmed the judgment of the U.S. District Court.  *See Prunty v. Terry*, No. 09-1790 (4th Cir. 2010).  Prunty petitioned the Fourth Circuit for a panel hearing and rehearing en banc.  By Order entered September 21, 2010, the Fourth Circuit denied the petition for rehearing and rehearing en banc.  *See id.*  On December 20, 2010, Prunty filed a Petition for Writ of Certiorari

---

[5]  The Court's February 20, 2009, Order was interlocutory as it did not accord complete relief among the parties. The complaint in the Adversary Proceeding included a count requesting authority under § 363(h) to sell the joint ownership interest in the Properties.  The Court declined to grant summary judgment on this count finding that material facts remained in dispute with respect thereto.  *See Terry v Paschall (In re Paschall)*, 403 B.R. at 379.

with the U.S. Supreme Court, which was denied by Order entered February 28, 2011. *Prunty v. Terry*, 2011 U.S. LEXIS 1732 (Feb. 28, 2011).

## Procedural Posture of the Bankruptcy Case

Following the denial of certiorari by the Supreme Court in the Adversary Proceeding, Prunty filed her Claim in this Court on March 10, 2011. On May 27, 2011, the Trustee filed his objection to Prunty's Claim (the "Objection"). The Court entered a scheduling order on June 3, 2011, that established procedures for conducting the evidentiary hearing the Court set for September 27, 2011. *See* Fed. R. Bankr. P. 9014(e). On June 14, 2011, Prunty filed an amended proof of claim in the amount of $1,487,226.78. Prunty filed two responses to the Trustee's Objection on August 9 and August 12, 2011. The Trustee filed an amended objection to Prunty's Claim and a memorandum in support thereof on September 20, 2011. Prunty has neither turned over the estate's interest in the Properties nor remitted the value of the estate's interest in the Properties to the Trustee in accordance with this Court's February 20, 2009, Order in the Adversary Proceeding.

## Analysis

The issue before the Court is whether Prunty's Claim in the amount of $1,487,226.78 is allowable under § 502. Only allowed claims are entitled to payment from property of the estate. 11 U.S.C. § 726. Section 502(h) provides that "[a] claim arising from the recovery of property under section 522, 550, or 553 of [Title 11] shall be determined, and shall be allowed under subsection (a), (b), or (c) of [§ 502], or disallowed under subsection (d) or (e) of [§ 502], the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h).

Prunty asserts that this Court's February 20, 2009, Order in the Adversary Proceeding that avoided the transfers of the Properties effectively rescinded the Final Decree of Divorce

which had established the Couple's respective interests in marital property.  Prunty argues that all

of the claims and property issues settled by the Final Decree of Divorce are now revived.  Prunty

is now reasserting under § 502(h) debts and obligations that were resolved in the Final Decree of

Divorce as claims arising from the recovery of property under § 550.

In reliance on this argument, Prunty has filed her expansive amended Claim.  Prunty cites

as the basis for her Claim "implied contract," § 20-107.3 of the Virginia Code (concerning the

distribution of property incident to divorce), and the "ruling of the U.S. District Court in the

Adversary Proceeding."  Prunty's Claim includes three components.  The first, in the amount of

$1,310,169.47, is for the marital debt that was resolved in the Final Decree of Divorce.  This

includes claims for payments Prunty made related to the Debtor's premarital debts, premarital

funds Prunty used to purchase the Properties, improvements Prunty made to the Properties, taxes

and insurance Prunty paid on the Properties, cash payments Prunty made to the Debtor pursuant

to the Marital Agreements, and negative equity in the Midlothian Property.  The second

component in the amount of $17,069.78 consists of claims against the Debtor that allegedly arose

between the date of the Final Decree of Divorce and the Petition Date.  The third component in

the amount of $159,987.52 is for postpetition expenditures that Prunty claims were necessary to

maintain the value of the bankruptcy estate's interest in the Properties.

Turning to the first component of the Claim, it is well settled that a successful avoidance

action does not revive the underlying contract or agreement pursuant to which an avoided

transfer was made.  *See, e.g., Official Comm. of Unsecured Creditors of Enron Corp. v. Martin*

*(In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 465 (Bankr. S.D.N.Y. 2007) ("While the

payment obligation is revived, the underlying contract is not rescinded as evidenced by the fact

that, pursuant to section 502(h) of the Bankruptcy Code, the claimant is allowed a pre-petition

claim against the bankruptcy estate for the obligation under the contract.").   In this case the

obligation under the contract is the Debtor's obligation to convey his interest in the Properties to

Prunty.   Only that obligation is revived.   Because Prunty has lost the value of what she received

as a result of the avoidance of the transfers, she is entitled to assert that obligation against the

Debtor's estate.   *Id.* at 465 (citing *In re Gurley*, 311 B.R. 910, 918 (Bankr. M.D. Fla. 2001)).   All

other provisions of the Final Decree of Divorce and the incorporated Marital Agreements are still

valid, and the claims that the parties released against each other by virtue of the Final Decree of

Divorce remain extinguished.   Any claim Prunty may assert under § 502(h) as arising from the

avoidance of the transfer of the Properties is limited to the value of any interest in the Properties

that the Trustee may be able to recover from Prunty under § 550.   *In re Kmart Corp., et al*, 2006

Bankr. LEXIS 542, at *20 (N.D. Ill. Apr. 11, 2006) (stating that "[§] 502(h) gives a transferee of

property that is recovered under § 550 a prepetition claim for the amount recovered."); *See* S.

Rep. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5851, 1978 WL 8531 (stating that

"[s]ubsection (h) gives a transferee of a setoff that is recovered by [a] trustee a prepetition claim

for the amount recovered").   Prunty may, therefore, assert under § 502(h) a claim for the value of

any property recovered by the Trustee.[6]   However, the $1,310,169.47 portion of Prunty's claim

---

[6]   While Prunty would have the right under § 502(h) to assert a claim for the value of any property the Trustee may
recover pursuant to § 550, Federal Rule of Bankruptcy Procedure 3002(c)(3) provides that this claim must be filed
within 30 days after the judgment avoiding the transfers becomes final.   Fed. R. Bankr. P. 3002(c)(3).   Section
502(d) further holds that a party that has received a preferential transfer may not file a proof of claim following the
avoidance of the transfer until it has turned over the property to the Trustee.   *Petitioning Creditors of Melon
Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1237 (1st Cir. 1997) (stating that "Once the recipient complies with the
payment or turnover order of the bankruptcy court, it may file a proof of claim.").   Therefore, if the liability imposed
by the judgment is not satisfied within the 30 day period provided by the Bankruptcy Rules, then the claim under
§ 502(h) would be permanently disallowed.   *See* Fed. R. Bankr. P. 3002(c)(3), *In re Accord Group, Inc.*, 211 B.R.
193, 194 (Bankr. E.D.N.C. 1997) (holding that the 30 day filing deadline for claims arising as a result of a judgment
applies despite the fact that § 502(d) bars a claim from being filed during that period).

representing expenses and obligations settled by the Final Decree of Divorce must be permanently disallowed.

The second component of Prunty's claim is for expenses that Prunty says she incurred maintaining the Properties for the period between the date of the Final Decree of Divorce and the Petition Date.  While Prunty does not differentiate these expenses from those arising as a result of the purported revocation of the Final Decree of Divorce, these expenses are best characterized as prepetition carrying costs necessary for the preservation of the Properties for which Prunty believes the Debtor remained liable following the Final Decree of Divorce.[7]  To the extent that the Debtor was responsible for some of these expenses following the Final Decree of Divorce, Prunty would be entitled to assert a prepetition claim for these expenses separate and apart from any claim that may arise from the recovery of the Properties under § 550.

The Court finds that this second component of Prunty's Claim is not time barred.  It can be properly asserted as a late-filed claim under § 726(a)(2)(C).  Generally, tardily filed claims are not allowed to participate in the distribution of the bankruptcy estate proceeds.  Section 502(b)(9), however, makes an exception to the extent that a claim is "tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a). . . ."  11 U.S.C. § 502(b)(9).  Section 726(a)(2)(C) states:

> [P]roperty of the estate shall be distributed . . . second, in payment of any allowed unsecured claim . . . proof of which is filed
>> (A) timely filed under section 501(a) of this title;
>> (B) timely filed under section 501(b) or 501(c) of this title; or
>> (C) tardily filed under section 501(a) of this title, if-

---

7  This second component of Prunty's Claim cannot be asserted under § 502(h), as that section limits claims arising from the recovery of property under § 550 to the value of the property actually recovered.

> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
> (ii) proof of such claim is filed in time to permit payment of such claim.

11 U.S.C. §726(a)(2)(C).

While the deadline for filing claims in this case expired on November 28, 2007, it is uncontested that Prunty did not receive notice of the bankruptcy case until January 16, 2008.  Prunty was therefore eligible to file a proof of claim as a creditor that did not have notice or actual knowledge of the case under § 726(a)(2)(C).

Although Prunty failed to file her Claim until March 10, 2011, the resulting delay is of no moment.  As a creditor that did not have timely notice or actual knowledge of the case, Prunty is entitled to submit a late-filed claim at any time, subject only to the constraint that a final distribution of the estate must not have occurred.  *See, e.g., In re Columbia Ribbon & Carbon Mfg. Co., Inc.*, 54 B.R. 714, 720 (Bankr. S.D.N.Y. 1985) ([T]he court need not consider how long the creditor waited to file its claim after learning of the bankruptcy case.  The court need only find, as it has done in this case, that the creditor did not have notice in time to file a claim before the expiration of the 90-day period and that final distribution of the estate has not occurred."), *In re Horlacher*, 389 B.R. 257, 263 (Bankr. N.D. Fla. 2008) ("[Section 726(a)(2)(C)] allows a chapter 7 creditor to participate in distribution if the creditor had no knowledge of the bar date and files a claim after the set 90 day deadline but before distribution of the estate.").  As no distribution has yet taken place in this case, any claim Prunty may have for payments that she was required to make on the Debtor's behalf between the date of the Final Decree of Divorce and the Petition Date in order to preserve the Properties is permitted under §§ 502(b)(9) and 726(a)(2)(C).

The substance of Prunty's claim against the Debtor for these expenses is more problematic. Prunty had sole possession of the Properties following the Final Decree of Divorce. Pursuant to the Final Decree of Divorce, Prunty was to bear the full cost of maintaining the Properties, including repairs, property taxes, insurance payments, and interest payments. Prunty would need to establish some independent basis for the Debtor's liability for these expenses.[8] However, as the $17,069.78 portion of Prunty's Claim must be temporarily disallowed for the reasons set forth below, the Court need not reach the merits of this portion of the Claim at the present time.

The final component of Prunty's Claim consists of $159,987.52 in expenses that Prunty asserts she incurred for the maintenance and preservation of the Properties after the Petition Date. Prunty contends that this portion of her Claim is entitled to administrative priority status. Section 503(b)(1) states that administrative expenses may be allowed for "the actual, necessary costs and expenses of preserving the estate." In recognition of the fact that the Debtor's limited resources should be equally distributed among the creditors, § 503 must be narrowly construed. *Devan v. Debartolo Group, L.P (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999) (quoting *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994)). The requirement that the expenses be "actual" and "necessary" "must be observed with scrupulous care." *Id.* The Fourth Circuit has held that the actual, necessary costs of preserving the estate are costs: (1) that arise from a postpetition transaction between the party claiming the administrative expense and the trustee, and (2) in which the party seeking the allowance of the administrative

---

8 Even if Prunty were to establish an independent basis for recovering these expenses, she may be estopped from doing so. In her response to the Trustee's interrogatory number eight, she stated: "Deborah is not claiming any right of contribution from the debtor. . . . Deborah and Rick's rights and obligations to each other were resolved by the Final Decree of Divorce entered on September 13, 2006, which incorporated the Marital Agreement and the Buyout Agreement."

expense has provided consideration benefiting the bankruptcy estate. *In re Merry-Go-Round Enters., Inc.*, 180 F.3d at 157, *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n.2 (4th Cir. 1995).

There is no dispute that the postpetition expenses for which Prunty asserts an administrative expense Claim neither arose in a transaction between Prunty and the Trustee nor were approved by the Trustee or this Court prior to being incurred. Thus, Prunty's assertion that she is entitled to reimbursement for these expenses as actual and necessary costs of preserving the estate under § 503 would appear to fail.

While conceding this point at the hearing during oral argument, Prunty maintains that the Court should nevertheless treat her postpetition expenditures as Administrative Expenses because had she not incurred these expenses the value of the Properties would have diminished significantly. The Court has the discretion to retroactively approve these types of expenses as Administrative Expenses *nunc pro tunc* as an exception to the general rule requiring parties to obtain prior approval of such expenses from the Court or the Trustee. However, retroactive authorization of Administrative Expenses "should only be granted in unusual circumstances." *Photo Promotion Assocs., Inc. v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*, 881 F.2d 6, 9 (2d Cir. 1989). Unapproved costs incurred postpetition should only be treated as compensable administrative expenses when they are "of an extraordinary nature as necessitated by special circumstances and result in a direct or demonstrable benefit to the estate*." Ruck v. Tavenner (In re Smoot)*, 2006 U.S. Dist. LEXIS 22493, at *16 (E.D. Va. 2006) (quoting *In re Kidron, Inc.*, 278 B.R. 626, 634 (Bankr. M.D. Fla. 2002).

Prunty has not provided any evidence to support a claim that these expenses were the result of any emergency or extenuating circumstances. The expenses were all quite ordinary and were easily anticipated. More importantly, Prunty failed to prove that the expenses resulted in a

direct or demonstrable benefit to the estate.  To the contrary, the expenses were incurred in furtherance of Prunty's efforts to forestall the Trustee from receiving the estate's interest in the Properties.  The only reason for the value of the Properties to have diminished, as Prunty maintains the value would have, is because of Prunty's refusal to turn over the estate's interest in the Properties to the Trustee in the first instance.  The protracted litigation and ensuing delay has frustrated the Trustee's ability to efficiently administer the bankruptcy estate.  Prunty's course of action has not enhanced or maintained the value of the estate's interest in the Properties, but rather, has diminished it.  The Court therefore declines to allow an exception to the general rule.  It will not retroactively approve these expenses as Administrative Expenses *nunc pro tunc*.  The $159,987.52 portion of Prunty's claim for postpetition expenses must be disallowed.

Although Prunty may be able to assert (i) a claim under § 502(h) for the value of any interest in the Properties ultimately recovered by the Trustee[9] and (ii) a late claim under §§ 502(b)(9) and 726(a)(2)(C) for any unreleased liability the Debtor may have incurred to Prunty during the period between the date of the Final Decree of Divorce and the Petition Date, these claims must be temporarily disallowed under § 502(d) until Prunty turns over the estate's interest in the Properties to the Trustee.[10]  Section 502(h) allows Prunty to file a claim arising from the recovery of property in an avoidance action, but conditions this right by stating that the claim "shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section,

---

[9]  *See* note 6, *supra*.

[10]  Although Prunty would ordinarily be required to turn over the estate's interest in the Properties, Prunty's unauthorized sale of the Midlothian Property in violation of the Court's February 20, 2009, Order in the Adversary Proceeding has eliminated this possibility.  *See* 11 U.S.C § 550(a).  As Prunty sold the Midlothian Property without Court approval and misappropriated the sales proceeds for her own use and benefit, the Trustee is left to recover the value of the estate's interest in the Midlothian Property as of the Petition Date plus any damages that the estate may have suffered as a result of the unauthorized sale.

*or disallowed under subsection (d) or (e) of this section*, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h) (emphasis added). Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, *unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title*." 11 U.S.C. § 502(d) (emphasis added).

Prunty's Claim is thus subject to the strictures of § 502(d). Prunty is an "entity from which property is recoverable under section 542, 543, 550, or 553." This was established by the Court's February 20, 2009, Order in the Adversary Proceeding and is not in dispute. It is also undisputed that Prunty has not turned over to the Trustee the estate's interest in the Properties for which she is liable under § 550. Section 502(d), therefore, unequivocally requires the Court to disallow Prunty's claim until she turns over the estate's interest in the properties to the Trustee.

Prunty maintains, under a theory of setoff, that despite § 502(d) she is not required to turn over the value of the Properties. Setoff allows "a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under [the Bankruptcy Code] against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). However, a creditor generally cannot set off his claims against an obligation to return a preference to the estate.[11] *In re Chase & Sanborn Corp.*, 124 B.R. 371,

---

[11] The one narrow and limited exception to this principal is set forth in *Page v. Rogers*, 211 U.S. 575 (1909). In this case, the Supreme Court held that where litigation had come to an end and where a final decree was to be entered, requiring a creditor to return a preferential transfer to the estate only to immediately receive a dividend from the estate was unnecessary and burdensome, and therefore held that setoff could be applied. However, this case has been strictly limited to its facts. Setoff of an avoided preference is only permitted under *Page* if "the dividend can be quickly and easily determined, and the dividend is immediately payable." *In re Gander Mountain, Inc.*, 20 B.R.

374-75 (Bankr. S.D. Fla. 1991).  As explained in *Collier on Bankruptcy*, "[t]he reasoning for this rule is that allowing the creditor to offset the amount of the transfer would merely continue the preference, thereby rendering the preference statute useless because the preference would not become available for pro rata distribution to all creditors."  5 Collier on Bankruptcy ¶ 553.03 (2011).  This reasoning is particularly applicable here, as the sole asset of the estate is the value of the avoided transfer.  Should the Court allow Prunty to offset any claims that she may have against the value of the avoided transfer, this would continue the effect of the preference by allowing Prunty to receive the full amount of these additional claims at the direct expense of other creditors.

Furthermore, Prunty is barred from setting off the judgment for the avoided transfers against any claims she may have against the estate by the plain language of § 553(a)(1).  Section 553(a)(1) prevents the use of setoff "to the extent that the claim of such creditor against the debtor is disallowed."  11 U.S.C. § 553(a)(1).  As discussed *supra*, § 502(d) requires the Court to disallow any claim of any entity from which property is recoverable under § 550 until the property or the value of the property is turned over to the Trustee.  Until Prunty delivers the estate's interest in the Properties to the Trustee, any and all prepetition claims that she may assert against the estate are disallowed and cannot be used to set off any obligation of Prunty to the estate.  Prunty, therefore, cannot rely on a theory of setoff to block the Trustee from recovering the estate's interest in the Properties.

---

260, 265 (Bankr. E.D. Wisc. 1983).  In this case, none of these conditions are present and thus this limited exception does not apply.

## Conclusion

Claim number 11 submitted by Deborah Prunty will be permanently disallowed in part and temporarily disallowed in part.  All claims arising from the purported revocation of the Final Decree of Divorce remain settled and are permanently disallowed, as it is well established that the avoidance and recovery of a preferential transfer does not revive the entire underlying contract or agreement.   All administrative claims arising after the Petition Date are also permanently disallowed, as Prunty failed to properly assert these claims as Administrative Expenses under § 503(b) and the Court declines to retroactively approve these expenses *nunc pro tunc.*

The Court further holds that Prunty may be able to assert a claim under § 502(h) for the amount of the transfers that the Trustee may ultimately recover, and additionally she may be able to assert a late claim under § 502(b)(9) and § 726(a)(2)(C) for any liability the Debtor may have incurred to Prunty between the date of the Final Decree of Divorce and the Petition Date.  As factual issues remain unresolved regarding the value of the avoided transfers and regarding any liability the Debtor may have incurred to Prunty between the date of the Final Decree of Divorce and the Petition Date, further proceedings will be necessary to determine the specific amount of any such claims that may be allowable.  In the meantime, Prunty is barred by § 502(d) from asserting these claims until Prunty turns over the value of the estate's interest in the Properties to the Trustee.

A separate order shall issue.

ENTERED: _____


_____/s/Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE